UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| TODD HELMS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | No. 18 C 8434 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| VILLAGE OF CLARENDON HILLS, ILLINOIS, | ) ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Todd Helms, a retired police officer for Defendant Village of Clarendon Hills, Illinois (the "Village") and a member of the U.S. Army Reserves, claims that the Village discriminated against him based on his military service. After retiring from the police force, Helms filed this suit claiming the Village violated the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 *et seq.*[1] The Village has moved to dismiss Helms' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Although the Court does not find that the statute of limitations or laches bars any of Helms' claims at this time, Helms has not sufficiently alleged that he experienced adverse employment actions in March 2008, May 2011, or April 2013 so as to pursue a discrimination claim based on these events. Helms has also failed to sufficiently allege that the Village subjected him to a hostile work environment. But, drawing all reasonable inferences in Helms' favor, the remaining alleged discrete adverse actions taken by the Village suffice to allow him to base his discrimination claims on such conduct.

---

[1] The complaint includes counts for discrimination and retaliation under USERRA. The Court cannot discern the intended distinctions between these two counts and so treats them together under the framework of a discrimination claim.

# BACKGROUND[2]

Helms served as an active member of the United States Army. Around 2000, he transitioned from active to reserve duty. At the same time, Helms began employment as a police officer for the Village. The Village knew of his military service. But the Village attempted to interfere with his commitment to the Army and dissuade him from continuing in the reserves.

Specifically, in March 2008, after Helms appeared on a military deployment mobilization list, the Village informed Helms that the police department was "short staffed" and that, by going on a deployment, Helms would "screw[ ] over all of [his] co-workers and the Village." Doc. 1 ¶ 14. The Village chief of police also demanded that Helms ask Senator Dick Durbin, one of the U.S. Senators for Illinois, to cause the Army to rescind the deployment order. The chief of police also threatened that, if Helms deployed, he would lose out on a promotion opportunity. Helms, "[u]nder duress," caused himself to be removed from the deployment list. *Id.*

Subsequently, in May 2011, a Village employee mocked Helms for participating in reserve weekend drills. In April 2013, the Village required him to return to work within ninety days after Helms returned from a military deployment. At the time he returned, Helms learned that the Village had deprived him of seniority credits and benefits during his deployment. In December 2013, the Village removed Helms from his position as a field training officer after he participated in a twenty-one-day military war exercise. Several years later, in the spring and summer of 2016, Sergeant Wendy Porter informed Helms during his annual review that he could

---

[2] The facts in the background section are taken from Helms' complaint and are presumed true for the purpose of resolving the Village's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). The Court does not consider the Village's personnel policies and procedures manual, which the Village attached to its motion to dismiss. Helms does not reference this manual in the complaint, and the Village makes no argument as to the appropriateness of considering this extrinsic evidence at the motion to dismiss stage. *Cf. Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009) (the court may consider extrinsic evidence without converting a motion to dismiss into one for summary judgment where the document is referenced in the complaint and central to the plaintiff's claims).

improve by serving the police department in another area of specialty. Helms then volunteered to go to juvenile officer training, but the Village denied Helms the opportunity to do so. Sergeant Porter informed Helms that the Village would not send him to more training while he remained in the military.

In December 2018, Helms retired from his position with the Village. At that time, he learned that the Village would not monetarily compensate him for his accrued time. This time amounted to approximately 1160 hours and had a value of approximately $19,000.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

USERRA prohibits employment discrimination against military service members, providing that members "shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that

membership, application for membership, performance of service, application for service, or obligation." 38 U.S.C. § 4311(a).  A benefit of employment means "the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice." 38 U.S.C. § 4303(2).  Section 4316, which Helms cites as the basis for his claims, establishes the rights of service members absent from their employment while fulfilling their service obligations.[3]  It includes a provision that a person reemployed subject to USERRA "is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed." 38 U.S.C. § 4316(a).  A plaintiff states a USERRA discrimination claim by alleging that his employer subjected him to an adverse employment action for which the plaintiff's military service was a motivating factor. 38 U.S.C. § 4311(c); *Staub v. Proctor Hosp.*, 562 U.S. 411, 416–17, 131 S. Ct. 1186, 179 L. Ed. 2d 144 (2011).

      Helms appears to claim that the Village acted to prevent Helms and other employees from fulfilling their military service commitments during their employment with the Village, took adverse employment actions against him, and subjected him to a hostile work environment because of his military service.  The Village argues that Helms cannot pursue any claims for violations of USERRA that occurred prior to October 2008, that laches bars claims based on conduct through 2013, and that Helms has failed to allege an actionable adverse employment action or a hostile work environment.  The Court addresses these arguments in turn.

---

[3] Although Helms only specifically invokes § 4316, the Court can also consider his claims under § 4311 because Helms pleads the elements of a § 4311 offense and so has placed the Village on notice of such a claim.  *See Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010).

I.      **Statute of Limitations and Laches**

First, the Village asks the Court to dismiss Helms' claims to the extent he bases them on actions taking place before October 2008, including the allegation that, in March 2008, the Village demanded that Helms seek removal from the military deployment mobilization list. Prior to October 2008, a four-year statute of limitations applied to USERRA claims. *See Middleton v. City of Chicago*, 578 F.3d 655, 657–62 (7th Cir. 2009) (concluding that the four-year statute of limitations in 28 U.S.C. § 1658 applied to USERRA upon its enactment). But on October 10, 2008, the Veterans Benefit Improvement Act ("VBIA") went into effect, eliminating a limitations period for USERRA claims. 38 U.S.C. § 4327(b); *Middleton*, 578 F.3d at 662. The VBIA's elimination of the limitations period does not apply retroactively to claims that had expired before the VBI's enactment, i.e. those based on conduct that occurred before October 2004. *Middleton*, 578 F.3d at 662–65. But *Middleton* left open the question of "whether § 4327(b) applies retroactively to a claim that accrued *within* the four years preceding the VBIA." *Id.* at 663. Those courts to consider the question have concluded that the VBIA applies to USERRA claims that would have been timely at the time of the VBIA's enactment. *See Andritzky v. Concordia Univ. Chicago*, No. 09 C 6633, 2010 WL 1474582, at *4–5 (N.D. Ill. Apr. 8, 2010); *see also Cabrera v. Perceptive Software, LLC*, 147 F. Supp. 3d 1247, 1251–52 (D. Kan. Dec. 2, 2015) ("Plaintiff's USERRA claims are not time-barred because the enactment of the VBIA eliminated the limitations period for Plaintiff's claims before those claims became untimely."). Although the parties have not addressed this aspect of the timeliness issue, the Court finds it appropriate to adopt the analysis in *Andritzky* that USERRA claims that would have been timely at the time of the VBIA's enactment remain viable. 2010 WL 1474582, at *4–5. This means that the statute of limitations does not bar Helms' claim based on the March 2008

conduct.[4] *Id.* (allowing plaintiff to proceed on USERRA claim based on events occurring on December 17, 2004, less than four years before the enactment of the VBIA).

The Village also argues that Helms cannot pursue his claims based on events occurring in 2008, 2011, and 2013 based on laches, a defense requiring the Village to establish "an unreasonable lack of diligence by" Helms and resultant prejudice. *Maher v. City of Chicago*, 547 F.3d 817, 822 (7th Cir. 2008) (quoting *Roberts & Schaefer Co. v. Dir., Office of Workers' Comp. Programs*, 400 F.3d 992, 997 (7th Cir. 2005)). Laches, however, is an affirmative defense, and a motion to dismiss is generally not the appropriate vehicle to raise this defense. *See Garner v. Nat'l Railway Corp.*, No. 18-cv-3789, 2019 WL 414711, at *5 (N.D. Ill. Feb. 1, 2019). Further, the Village relies only on the passage of time to support laches without identifying allegations in Helms' complaint that establish the elements of laches as a matter of law. Although the Village may ultimately prevail on a laches defense, the Court cannot make such a fact-bound determination at this time based merely on the age of the alleged conduct. *Id.* (refusing to "adopt a presumption that the elements of laches are satisfied merely because certain allegations date back some threshold number of years" and instead noting the fact-intensive nature of the inquiry, even at summary judgment).

## II. Adverse Employment Action

Next, the Village argues that Helms has not alleged any actionable adverse employment action under USERRA. The Seventh Circuit has interpreted §§ 4311 and 4316 to apply only to "discriminatory employment actions that provide military employees with fewer benefits" than non-military employees. *Crews v. City of Mt. Vernon*, 567 F.3d 860, 865–66 (7th Cir. 2009). Although Helms asks the Court to disregard *Crews* and instead conclude that USERRA requires

---

[4] Alternatively, Helms argues that the continuing violation doctrine saves any time-barred claims. The Court need not address this argument, however, because the Court has found that none of the alleged conduct occurred outside of the statute of limitations.

6

preferential treatment of service members, the Court cannot do so and so does not consider any arguments along such lines. *See Gross v. PPG Indus., Inc.*, 636 F.3d 884, 889–90 (7th Cir. 2011) (refusing to overrule *Crews*' holding that § 4311 does not require preferential treatment for service members). Instead, the Court looks to caselaw regarding adverse employment actions under other civil rights statutes to determine what qualifies as adverse under USERRA. *Crews*, 567 F.3d at 868–69.

A materially adverse employment action is an action that involves "a significant change in employment status," *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (quoting *Andrews v. CBOCS W., Inc.*, 743 F.3d 230, 235 (7th Cir. 2014)), and is "more disruptive than a mere inconvenience or an alteration of job responsibilities," *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 779 (7th Cir. 2007) (quoting *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004)). Adverse employment actions generally fall into three categories: "(1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453–54 (7th Cir. 2011).

In his response, Helms generally argues that his allegations all support a USERRA claim, but he only specifically addresses whether the deprivation of compensation for accrued time upon his retirement amounts to an adverse employment action. The parties have a factual dispute concerning whether Helms was entitled to receive a payout of his accrued time upon retirement based on differing calculations of his years of service. But the Court cannot resolve this factual dispute at this stage. Drawing all inferences in Helms' favor, to the extent Helms and

7

other Village employees were entitled to a payout for accrued time, the Court finds that the denial of compensation for such accrued time would amount to an adverse employment action. *See Lara-Woodcock v. United Air Lines, Inc.*, 999 F. Supp. 2d 1027, 1041 (N.D. Ill. 2013) (denial of leave could amount to a significant change in benefits if leave was regularly made available to other employees); *Wettstein v. Westphal & Co.*, No. 99-C-2780-C, 2000 WL 34239106, at *14 (W.D. Wis. Feb. 25, 2000) (denial of accrued vacation pay could amount to materially adverse action). Helms has pleaded as much; the resolution of the parties' factual disputes concerning Helms' years of service with the Village must await further development.

As with the denied compensation claim, drawing all inferences in Helms' favor, several other allegations plausibly suggest the Village took adverse employment actions against Helms. The Village acknowledges that the deprivation of a training opportunity based on Helms' military status could amount to an adverse employment action. *See Durkin v. City of Chicago*, 341 F.3d 606, 611 (7th Cir. 2003) ("A discriminatory denial of job-related training can constitute an adverse employment action[.]"). But the Village argues that Helms had no right to receive his preferred training and that he has not pleaded that the Village deprived him of training so as to cause his skills to atrophy. The Village asks for too much at this stage. Helms' allegations plausibly suggest that the Village deprived him of training opportunities, despite suggesting in his annual review that he needed to acquire additional skills. The Village also concedes that a failure to receive the same seniority as he would have had he been continuously employed would amount to a violation of § 4316, but it claims Helms does not allege he never received seniority credits. Although the evidence may disprove this claim, at this stage, the Court finds the allegations sufficient to allow the inference that Helms never received the required seniority credits. Finally, Helms' removal as a field training officer could amount to an actionable

demotion. *See Clark v. SMG Corp.*, No. 16-cv-07985, 2018 WL 4699763, at *3 (N.D. Ill. Sept. 30, 2018) (demotion, as well as "[a] transfer to a position with the same pay and benefits, but that effectively amounts to a demotion or reduced opportunities for promotion," qualifies as adverse employment action). Therefore, the Court allows Helms to proceed on his claims based on the alleged deprivation of seniority credits, removal as a field training officer, denial of training opportunities, and denial of compensation for his accrued time upon retirement.

But Helms cannot proceed on the remaining alleged instances of adverse conduct. The March 2008 threats of a denial of a promotion cannot serve as adverse actions because Helms does not allege that any material harm came of those threats. *See Breneisen v. Motorola, Inc.*, 512 F.3d 972, 981 (7th Cir. 2008) (comments that if supervisor "had a full staff, he could get some work done" not actionable discrimination); *Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 531 (7th Cir. 2003) ("An unfulfilled threat, which results in no material harm, is not materially adverse."); *Buckley v. Peak6 Invs., LP*, 827 F. Supp. 2d 846, 856 (N.D. Ill. 2011) ("Demands of an employer that conflict with military service are not actionable under § 4311, however, in the absence of evidence that the employer took an adverse employment action against the employee for failing to meet them."). Similarly, the May 2011 comments do not rise to the level of a materially adverse action because Helms does not allege that they had any impact on the conditions of his employment. *See Crews*, 567 F.3d at 870 (in retaliation context, disparaging comments about plaintiff that did not have an impact on plaintiff's conditions of employment, do not meet the materially adverse requirement). Finally, with respect to the Village requiring Helms to return to work in April 2013 in violation of an alleged ninety-day readjustment period, the Court cannot find any basis in USERRA for such a readjustment period during which the employer cannot require the returning service member to rejoin the employer. Instead of

preventing an employer from requiring an employee to return to work within ninety days of returning from deployment, USERRA provides that a service member deployed for more than 180 days must apply for reemployment within ninety days of completing the deployment, with the employer required to promptly reemploy the service member upon such an application. 38 U.S.C. § 4312. The complaint suggests the opposite of a § 4312 violation, and so the Court cannot find the Village's prompt reemployment of Helms after his return from deployment actionable. The Court dismisses Helms' claims based on the March 2008, May 2011, and April 2013 conduct without prejudice.

### III. Hostile Work Environment

Although he does not specifically address it in his response, Helms also appears to bring a hostile work environment claim under USERRA in his complaint. *See McDaniel v. Loyola Univ. Med. Ctr.*, No. 13-cv-06500, 2014 WL 4269126, at *7 (N.D. Ill. Aug. 28, 2014) (concluding that USERRA allows for a hostile work environment claim). For the purposes of completeness, the Court addresses these allegations as well, considering the standards used to evaluate such claims under Title VII. *See id.* (using Title VII framework for hostile work environment claims); *Montoya v. Orange County Sheriff's Dep't*, 987 F. Supp. 2d 981, 1016 (C.D. Cal. 2013) ("Because there is very little case law examining a hostile work environment claim in the context of USERRA, the Court incorporates the standards and case law used to evaluate hostile work environment claims under Title VII.").

A hostile work environment is one that is "permeated with discriminatory intimidation, ridicule and insult." *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004) (citation omitted). To state a hostile work environment claim, Helms must allege that (1) he was subject to unwelcome harassment, (2) the harassment was based on his military service, (3) the

harassment was so severe or pervasive that it altered the conditions of employment and created a hostile or abusive working environment, and (4) a basis exists for employer liability. *Id.*; *McDaniel*, 2014 WL 4269126, at *7. Factors used by the Court to determine whether harassment rises to the actionable level include the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Ezell v. Potter*, 400 F.3d 1041, 1047 (7th Cir. 2005). Considering these factors, Helms has not sufficiently pleaded actionable harassment. His allegations suggest only relatively infrequent comments about his military status over the course of ten years, which, even taken together, do not suggest severe or pervasive misconduct. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998) ("'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" (citations omitted)); *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881 (7th Cir. 2018) ("[E]mployers generally do not face liability for off-color comments, isolated incidents, teasing, and other unpleasantries that are, unfortunately, not uncommon in the workplace."). Without additional details, the Court cannot conclude that Helms has plausibly stated a hostile work environment claim. *See McDaniel*, 2014 WL 4269126, at *7 ("Plaintiff's allegations in the Amended Complaint, while no doubt describing rude and unpleasant conduct, by themselves do not seem to rise to the level of the hostile and abusive atmosphere found in the case law." (collecting cases)).

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Village's motion to dismiss [15]. The Court dismisses Helms' discrimination claim based on the events occurring in March 2008, May 2011, and April 2013, and his hostile work environment claim without prejudice.

Dated: June 7, 2019

										 _____
										 SARA L. ELLIS
										 United States District Judge